UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| DEVIN ALEXANDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:17 CV 204 ACL |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner of Operations, ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM**

Plaintiff Devin Alexander brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Alexander's severe mental impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform work existing in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be reversed and remanded.

### **I. Procedural History**

Alexander filed his application for SSI on December 16, 2014, claiming that he became

unable to work on April 1, 2009.[1] (Tr. 135-40.) In his Disability Report, he alleged disability due to severe social anxiety and mood disorder. (Tr. 162.) Alexander was 20 years of age at the time of his alleged onset of disability. His claim was denied initially. (Tr. 73.) Following an administrative hearing, Alexander's claim was denied in a written opinion by an ALJ, dated September 15, 2016. (Tr. 10-25.) Alexander then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on September 25, 2017. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Alexander argues that the ALJ "failed to provide an RFC supported by substantial evidence in that the ALJ did not properly consider the opinion from Alexander's treating doctor, Dr. Mirza." (Doc. 11 at 7.)

## II. The ALJ's Determination

The ALJ first found that Alexander has not engaged in substantial gainful activity since November 16, 2014, the application date. (Tr. 15.) In addition, the ALJ concluded that Alexander had the following severe impairments: social phobia, schizoid personality disorder,[2] mood disorder, and psychosis not otherwise specified. *Id.* The ALJ found that Alexander did

---

[1] To be eligible for SSI, Alexander must establish that he was disabled while his application was pending. *See* 42 U.S.C. § 1382c; 20 C.F.R. §§ 416.330, 416.335. Thus, the relevant period for consideration is from November 26, 2014 (the date his application was filed), through September 15, 2016 (the date of the ALJ's decision).

[2] Schizoid personality disorder is characterized by a pattern of detachment from social relationships and a restricted range of emotional expression. *See American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders* 645 (Text Revision 4th ed. 2000) ("*DSM IV–TR*").

not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 16.)

As to Alexander's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of work at all exertional levels. He is limited to simple, routine, repetitive tasks with occasional interaction with co-workers, and no interaction with the general public. He retains the ability to accept supervision on a basic level.

(Tr. 18.) In making this determination, the ALJ assigned "significant weight" to the opinion of non-examining State agency psychological consultant Alan Aram, Psy.D. (Tr. 20.) By comparison, the ALJ gave "little weight" to the Medical Source Statement of treating psychiatrist Naveed Mirza, M.D. *Id.*

The ALJ found that Alexander had no past relevant work, but was capable of performing jobs existing in significant numbers in the national economy, such as industrial cleaner, tumbler operator, and lamination assembler. (Tr. 21-22.) The ALJ therefore concluded that Alexander was not under a disability, as defined in the Social Security Act, since November 16, 2014, the date the application was filed. (Tr. 22.)

The ALJ's final decision reads as follows:

> Based on the application for supplemental security income protectively filed on November 16, 2014, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the

regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley*

regulations.  20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).  First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."  *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).  "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).  "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley*

*v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §

416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does

not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Alexander argues that the ALJ erred in weighing the opinion evidence when determining Alexander's RFC.

RFC is what a claimant can do despite his limitations, and it must be determined on the basis of all relevant evidence, including medical records, physician's opinions, and claimant's description of his limitations. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *See Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). Therefore, an ALJ is required to consider at least some supporting evidence from a medical professional. *See Lauer*, 245 F.3d at 704 (some medical evidence must support the determination of the claimant's RFC); *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (the RFC is ultimately a medical question that must find at least some support in the medical evidence in the record). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000).

The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty. 20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

Alexander argues that the ALJ did not properly consider the opinion of treating psychiatrist Dr. Mirza. Dr. Mirza completed a Medical Source Statement-Mental on March 11, 2015. (Tr. 297-98.) Dr. Mirza listed Alexander's diagnoses as social phobia, schizoid personality disorder, mood disorder, and psychosis not otherwise specified ("NOS"). (Tr. 297.) He expressed the opinion that Alexander was extremely limited in the following areas: ability to work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruption form psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic

standards of neatness and cleanliness, and travel in unfamiliar places or use public transportation. (Tr. 297-98.) Dr. Mirza found that Alexander was markedly limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule and maintain regular attendance, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. *Id.* Alexander was moderately limited in his ability to remember locations and work-like procedures, understand and remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, and be aware of normal hazards and take appropriate precautions. *Id.* Dr. Mirza also indicated that Alexander would miss four or more days of work a month, and would likely be "off task" fifteen percent or more of the work day due to his symptoms. (Tr. 297.)

The ALJ indicated he was assigning "little weight" to Dr. Mirza's Medical Source Statement. (Tr. 20.) He explained that Dr. Mirza's opinion is "presented in a checkbox format without any explanation for the limitations assessed." (Tr. 21.) The ALJ noted that Dr. Mirza did not "provide any information gleaned from his treating relationship with the claimant beyond the claimant's diagnoses." *Id.* The ALJ stated that, although the medical record confirms these diagnoses, "neither abnormal medical signs nor treatment recommendations consistent with the profound limitations assessed by Dr. Mirza are documented." *Id.* Rather, Dr. Mirza "has appreciated no abnormalities warranting greater treatment than quarterly therapy and medication management sessions and encouragement to be more social." *Id.* The ALJ concluded that Dr. Mirza's "unexplained, unsupported opinion" was entitled to little weight. *Id.*

The record reveals that Alexander saw Dr. Mirza at the Kneibert Clinic approximately

every three months beginning in November 2013. (Tr. 218-96.) On November 27, 2013, Alexander reported that he had been staying in his room most of the time and that his "motivation issues" were a problem. (Tr. 254.) He stated that he was "not feeling depressed," but did not want to get in the way of his family. *Id* Alexander stated that he was not around a lot of people, and that he was a "bundle of nerves when being in public places." *Id.* He had been taking his medications, which included Sertraline,[3] Depakote,[4] and Hydroxyzine.[5] *Id.* Upon examination, Dr. Mirza noted Alexander exhibited good eye contact, had a cooperative attitude, his affect was anxious, his speech and psychomotor level were normal, his appearance was "bizarre," his mood was "neutral," his quality of thought was productive, his content of thought was phobic, and his insight and judgment were poor. (Tr. 255.) Dr. Mirza diagnosed him with generalized anxiety disorder, mood disorder, social phobia, and schizoid personality disorder. (Tr. 255-56.) He continued Alexander's Sertraline and Depakote. *Id.* On March 27, 2014, Alexander reported some struggles with his relationship with his parents and difficulty relating to others due to "extensive social anxiety." (Tr. 250.) He was "very limited" in his ability to relate to others, and was usually accompanied by his parents at appointments due to his "extensive social anxiety." *Id.* Dr. Mirza noted that Alexander experienced a "lot of trouble with simple things," and that his mother had to accompany him to most places. *Id.* On examination, Dr. Mirza found Alexander was guarded; otherwise his findings and diagnoses remained unchanged. (Tr. 251.) He continued Alexander's medications. *Id.* On June 18, 2014, Alexander remained "limited in

---

[3]Sertraline, or Zoloft, is indicated for the treatment of depression and anxiety. *See* WebMD, http://www.webmd.com/drugs (last visited February 13, 2019).

[4]Depakote is indicated for the treatment of epilepsy and psychiatric conditions such bipolar mania. *See* WebMD, http://www.webmd.com/drugs (last visited February 13, 2019).

[5]Hydroxyzine is an antihistamine indicated for the treatment of anxiety. *See* WebMD, http://www.webmd.com/drugs (last visited February 13, 2019).

his functioning," and was staying disconnected from his family most of the time. (Tr. 246.) He had made more attempts to go out and socialize, but remained paranoid. (Tr. 246.) On September 18, 2014, Alexander reported ongoing social anxiety that limited him from being around others and occasional paranoia, but he was not getting as aggravated lately. (Tr. 242.) On December 17, 2014, Alexander reported experiencing a "sinking feeling when he is in public, that it is more like taking breath away and energy away." (Tr. 238.) Dr. Mirza noted that Alexander continued to avoid others, and his ability to function continued to be limited. *Id.* On March 11, 2015, Alexander still struggled with doing "anything, socially," and had not been anywhere other than to the clinic for his appointments. (Tr. 277.) On June 3, 2015, Alexander reported that he had been "somewhat more active," in that he had planted a vegetable garden and was working on it. (Tr. 273.) He had attended a festival, during which time he was off medications. *Id.* Alexander reported that it was "somewhat rough without meds," and that he had experienced "some anxiety moments." *Id.* On September 2, 2015, Dr. Mirza stated Alexander was doing "fair." (Tr. 269.) He was still "very asocial," and tended to live in his own world. *Id.* Alexander had "no desire to take any initiative in life," and these "motivation issues" seemed to be a long-term problem. (Tr. 270.) On December 11, 2015, Dr. Mirza indicated Alexander experienced "some reality issues." (Tr. 266.) He remained socially limited, with poor coping skills, and an inability to express his feelings. *Id.* On March 4, 2016, Alexander was doing "fair." (Tr. 262.) He had not gone out and mostly stayed by himself in his room. *Id.* Alexander stated that he was "fine" when he was alone, but experiences "automatic thoughts that someone will get him that leads to avoidance behaviors." *Id.*

The undersigned finds that the ALJ failed to provide sufficient reasons for discrediting Dr. Mirza's opinions. The ALJ acknowledged that the medical record supported Dr. Mirza's

diagnoses, but concluded, "neither abnormal medical signs nor treatment recommendations consistent with the profound limitations assessed by Dr. Mirza are documented." (Tr. 21.) Contrary to the ALJ's finding, however, Dr. Mirza regularly noted abnormalities on examination consistent with the presence of "profound limitations." Specifically, Dr. Mirza consistently found that Alexander was anxious, guarded, his appearance was "bizarre," his content of thought was phobic, and his insight and judgment were poor. (Tr. 255, 251, 247, 243, 239, 278, 274, 270, 263.) Dr. Mirza noted that Alexander stayed in his room and avoided being around people due to his social anxiety and paranoia, was "very limited" in his ability to relate to others, had to be accompanied by his parents due to his "extensive social anxiety," and was significantly "limited in his functioning." (Tr. 254, 250, 246, 238.) Alexander "lived in his own world," and experienced "some reality issues." (Tr. 269, 266.) Dr. Mirza prescribed multiple psychotropic medications to treat Alexander's mental impairments. It is true that Dr. Mirza only saw Alexander quarterly. The relative infrequency of treatment, however, does not detract from the serious symptoms consistently observed by Dr. Mirza on examination.

Significantly, there is no contrary evidence from an examining mental health provider. The only other opinion in the record is that of non-examining State agency psychologist Dr. Aram. On February 3, 2015, Dr. Aram found that Alexander was markedly limited in his ability to interact appropriately with the public; and moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, and work in coordination with or in proximity to others without being distracted by them. (Tr. 69-70.) Dr. Aram expressed the opinion that Alexander was capable of learning and performing simple, routine work, with limited public interaction. (Tr. 70.)

The ALJ accorded "significant weight" to Dr. Aram's opinion, noting that Dr. Aram was

familiar with the disability determination process and regulations and based his opinion upon a "comprehensive review of the record." (Tr. 20.) The ALJ acknowledged that some evidence had been added to the record since Dr. Aram provided his opinion, but found that this additional evidence was cumulative of the evidence reviewed by Dr. Aram. *Id.*

"The opinion of a consulting physician who examines a claimant once or not at all does not generally constitute substantial evidence." *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (citing *Metz v. Shalala*, 49 F.3d 374, 378 (8th Cir. 1995)). This is especially true when the consulting physician's opinion is "contradicted by the evaluation of the claimant's treating physician." *Hancock v. Sec'y of Dep't of Health, Educ. & Welfare*, 603 F.2d 739, 740 (8th Cir. 1979).

The ALJ erred in discrediting the opinions of treating psychiatrist Dr. Mirza. Dr. Mirza, a specialist in psychiatry, was the only physician who saw Alexander on a regular basis for an extended period. As such, he was uniquely qualified to provide an opinion on Alexander's ability to function in the workplace. Dr. Mirza's opinions are supported by his own treatment notes, and there is no contradictory medical evidence in the record. Under these circumstances, it was error for the ALJ to discredit Dr. Mirza's opinions, and rely instead on the opinion of the non-examining State agency consultant.

The ALJ made the following determination regarding Alexander's RFC:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of work at all exertional levels. He is limited to simple, routine, repetitive tasks with occasional interaction with co-workers, and no interaction with the general public. He retains the ability to accept supervision on a basic level.

(Tr. 18.)

The ALJ's RFC determination is not supported by substantial evidence. As discussed

above, the ALJ failed to properly consider Dr. Mirza's opinions. To the extent the ALJ questioned the basis of Dr. Mirza's opinions, he should have either requested clarification from Dr. Mirza, or ordered a consultative examination from another source.

## **Conclusion**

The ALJ erred in weighing the medical opinion evidence, and determining Alexander's RFC. Because the ALJ's opinion finding Alexander not disabled is not supported by substantial evidence on the record as a whole, it is reversed and this matter is remanded for further proceedings consistent with this opinion. Upon remand, the ALJ shall properly weigh the medical opinion evidence, obtain additional evidence if necessary, and formulate a new mental RFC based on the record as a whole.

*/s/ Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 22nd day of March, 2019.